UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.   24cr10338 |
| | ) | |
| v. | ) | Violation: |
| | ) | |
| DAVID BRATSLAVSKY, | ) | Count One: |
| | ) | Conspiracy to Commit Securities Fraud |
| Defendant | ) | (18 U.S.C. § 371) |
| | ) | |
| | ) | Forfeiture: |
| | ) | 18 U.S.C. § 981(a)(1)(C) and |
| | ) | 28 U.S.C. § 2461(c) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.     Defendant DAVID BRATSLAVSKY lived in New York and Puerto Rico.

2.     Victim Law Firm A ("Law Firm A") and Victim Law Firm B ("Law Firm B") were two of the largest corporate law firms in the world by revenue.  Each operated in countries around the world.

3.     Nicolo Nourafchan lived in New York and California.  From in or about 2019 to 2021, Nourafchan worked on mergers and acquisitions as a corporate associate at Law Firm A. From in or about 2021 to 2023, Nourafchan worked on mergers and acquisitions as a corporate associate at Law Firm B.

4.     Robert Yadgarov was a personal injury lawyer in New York.

5.     BRATSLAVSKY, Nourafchan, and Yadgarov attended The George Washington University and were friends.

6.     CC-1 lived in New York and Puerto Rico.   CC-1 was friends with BRATSLAVSKY.

7.      Taubman Centers, Inc. ("Taubman") was an American real estate investment trust. At relevant times, Taubman traded on the New York Stock Exchange ("NYSE") under the ticker symbol TCO.  On or about February 10, 2020, Taubman and Simon Property Group, Inc. ("Simon") announced a definitive agreement under which Simon agreed to purchase all of Taubman's common stock.  Law Firm A represented Simon in connection with the acquisition of Taubman.  At the time of the announcement of Taubman's acquisition, Nourafchan worked for Law Firm A and owed duties of loyalty, trust, and confidence to Law Firm A and its clients.

8.      DSP Group, Inc. ("DSP Group") was an American company that manufactured telecommunications chipsets.  At relevant times, DSP Group traded on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol DSPG.  On or about August 30, 2021, DSP Group and Synaptics Incorporated ("Synaptics") announced a definitive agreement under which Synaptics agreed to acquire DSP Group.  Law Firm B represented Synaptics in connection with the acquisition of DSP Group.  At the time of the announcement of DSP Group's acquisition, Nourafchan worked for Law Firm B, which was headquartered in Boston, Massachusetts, and owed duties of loyalty, trust, and confidence to Law Firm B and its clients.

9.      Citrix Systems, Inc. ("Citrix") was an American technology company.  At relevant times, Citrix traded on the NASDAQ under the ticker symbol CTXS.  On or about January 31, 2022, Citrix and a group of private equity firms, including affiliates of Vista Equity Partners and Evergreen Coast Capital Corporation (collectively, "Vista"), announced a definitive agreement under which Vista agreed to acquire Citrix.  Law Firm B represented Citrix in connection with its acquisition by Vista.  At the time of the announcement of Citrix's acquisition, Nourafchan worked for Law Firm B and owed duties of loyalty, trust, and confidence to Law Firm B and its clients.

10.     SailPoint Technologies Holdings, Inc. ("SailPoint") was an American identity security company.  At relevant times, SailPoint traded on the NYSE under the ticker symbol SAIL. On or about April 11, 2022, SailPoint and Thoma Bravo announced a definitive agreement under which Thoma Bravo agreed to acquire SailPoint.  Law Firm B represented SailPoint in connection with its acquisition by Thoma Bravo.  At the time of the announcement of SailPoint's acquisition, Nourafchan worked for Law Firm B and owed duties of loyalty, trust, and confidence to Law Firm B and its clients.

Overview of the Conspiracy

11.     Beginning no later than February 2019 and continuing through at least August 2022, BRATSLAVSKY conspired with Nourafchan, Yadgarov, CC-1, and others known and unknown to the U.S. Attorney to obtain material non-public information ("MNPI") about the merger-and-acquisition activity of various publicly-traded companies and to execute securities trades while in possession of that MNPI.  As part of the conspiracy, Nourafchan and Yadgarov obtained MNPI from corporate insiders, including MNPI that Nourafchan misappropriated from his employers and their clients.  Nourafchan and Yadgarov then passed that MNPI to individuals whom Nourafchan and Yadgarov recruited to join the conspiracy as traders, including BRATSLAVSKY, who agreed to trade securities while in possession of that MNPI and to recruit other traders to trade while in possession of that MNPI.  In exchange for the MNPI from Nourafchan and Yadgarov, BRATSLAVSKY and other traders, including CC-1, agreed to share a portion of their insider trading proceeds with Nourafchan, Yadgarov, and other co-conspirators, in transactions designed to conceal and disguise the nature, location, source, ownership, and control of those proceeds.

3

Object and Purposes of the Conspiracy

12.    The object of the conspiracy was to commit securities fraud by trading in the securities of various companies while in possession of MNPI about those companies.   The principal purposes of the conspiracy were to make money and to conceal the conspirators' actions from others, including regulators and law enforcement.

Manner and Means of the Conspiracy

13.    Among the manner and means by which BRATSLAVSKY, Nourafchan, Yadgarov, CC-1, and others known and unknown to the U.S. Attorney carried out the conspiracy were the following:

a.    Recruiting attorneys and other corporate insiders, who had access to MNPI about the merger-and-acquisition activity of publicly traded companies;

b.    Misappropriating and sharing that MNPI, in violation of the duties of loyalty, trust, and confidence the attorneys, including Nourafchan, owed to the sources of the MNPI, including the attorneys' employers and their clients;

c.    Recruiting co-conspirators who agreed to trade in the securities of public companies while in possession of MNPI in exchange for an agreement to share in the profits generated by their insider trading;

d.    Trading in the securities of those companies while in possession of MNPI about them;

e.    Transferring proceeds of the illicit trading to corporate insiders and other co-conspirators in cash and other transactions designed to conceal and

disguise the nature, location, source, ownership, and control of the insider trading proceeds; and

f. Taking steps to conceal the conspiracy from regulators and law enforcement, including by communicating about the MNPI in person and via encrypted messaging applications, using coded language, and transferring proceeds in cash.

<u>Overt Acts in Furtherance of the Conspiracy</u>

14. Beginning no later than in or about February 2019 and continuing through at least August 2022, BRATSLAVSKY, Nourafchan, Yadgarov, and CC-1, together with others known and unknown to the U.S. Attorney, committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

*Taubman*

15. In or about January 2020, after Nourafchan misappropriated MNPI from Law Firm A and its client Simon regarding the Taubman acquisition, and after BRATSLAVSKY received that MNPI, BRATSLAVSKY passed the MNPI to CC-1 pursuant to an agreement that CC-1 would trade in possession of the MNPI and share the proceeds from that trading.

16. On or about January 22, 2020, BRATSLAVSKY sent CC-1 several messages via an encrypted messaging application, which he then deleted, and messaged CC-1: "call me when you have a moment."

17. On or about the same day, January 22, 2020, CC-1 began to purchase Taubman securities while in possession of MNPI regarding the potential acquisition.

18. On or about February 10, 2020 and thereafter, following the announcement regarding Taubman's acquisition, CC-1 sold Taubman securities.

*DSP Group*

19.    In or about August 2021, after Nourafchan misappropriated MNPI from Law Firm B and its client Synaptics regarding the potential DSP Group acquisition, and after BRATSLAVSKY received that MNPI, BRATSLAVSKY purchased DSP Group securities.  On or about August 20, 2021, while in the District of Massachusetts, BRATSLAVSKY began to purchase DSP Group shares.

20.    From on or about that day to on or about August 23, 2021, BRATSLAVSKY purchased at least 20,000 DSP Group shares while in possession of MNPI regarding the potential acquisition.

21.    On or about August 31, 2021 and September 1, 2021, following the announcement regarding DSP Group's acquisition, BRATSLAVSKY sold DSP Group securities.

*Citrix*

22.    In or about January 2022, after Nourafchan misappropriated MNPI from Law Firm B and its client Citrix regarding Citrix's potential acquisition, and after BRATSLAVSKY received that MNPI, BRATSLAVSKY purchased Citrix securities.

23.    On or about January 18, 2022, BRATSLAVSKY purchased at least 1,900 Citrix shares while in possession of MNPI regarding the potential acquisition.

24.    On or about February 7, 2022, following the announcement regarding Citrix's acquisition, BRATSLAVSKY sold Citrix securities.

*SailPoint*

25.    In or about April 2022, after Nourafchan misappropriated MNPI from Law Firm B and its client SailPoint regarding SailPoint's potential acquisition, and after BRATSLAVSKY received that MNPI, BRATSLAVSKY purchased SailPoint securities.

26.     On or about April 1, 2022, BRATSLAVSKY purchased at least 14,000 SailPoint shares while in possession of MNPI regarding the potential acquisition.

27.     On or about April 11, 2022, following the announcement regarding SailPoint's acquisition, BRATSLAVSKY sold SailPoint securities.

COUNT ONE
Conspiracy to Commit Securities Fraud
(18 U.S.C. § 371)

The U.S. Attorney charges:

28.    The U.S. Attorney re-alleges and incorporates by reference paragraphs 1 to 27 of this Information.

29.    From in or about February 2019 and continuing through at least August 2022, in the District of Massachusetts and elsewhere, the defendant,

DAVID BRATSLAVSKY,

conspired with Nicolo Nourafchan, Robert Yadgarov, CC-1, and others known and unknown to the U.S. Attorney to commit securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, to wit: knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly to use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities.

All in violation of Title 18, United States Code, Section 371.

8

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

30.    Upon conviction of the offense charged in Count One, the defendant,

### DAVID BRATSLAVSKY,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

31.    If any of the property described in Paragraph 30, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the Court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 30 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461(c).

                                        JOSHUA S. LEVY
                                        ACTING UNITED STATES ATTORNEY

                            By:    */s/ Kaitlin R. O'Donnell*
                                        KAITLIN R. O'DONNELL
                                        IAN J. STEARNS
                                        Assistant United States Attorneys